1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11   PREM S.,

12              Petitioner,                    No. 1:25-cv-01869-TLN-SCR

13

14        v.                                   **ORDER**

15   WARDEN OF THE GOLDEN STATE
     ANNEX DETENTION FACILITY et al.,
16
                Respondents.
17

18        This matter is before the Court on Petitioner Prem S.'s ("Petitioner") Motion for a

19   Temporary Restraining Order[1] ("TRO").  (ECF No. 1.)  Respondents filed an opposition.[2]  (ECF

20   No. 6.)  For the reasons set forth below, Petitioner's motion is GRANTED.

21

22   _____

     [1]       On December 15, 2025, Petitioner filed a pro se Petition for Writ of Habeas Corpus.
23   (ECF No. 1.)  Based on the substance of the petition and the relief requested therein, the Court
     liberally construed the petition as a motion for a TRO.  (ECF No. 3.)  *See Erickson v. Pardus*, 551
24   U.S. 89, 94 (2007).

25   [2]       Respondents were ordered to file an opposition to Petitioner's Motion for TRO and
     provide the Court with copies of all referenced/relevant portions of Petitioner's A-File and any
26   and all available records related to Petitioner's allegations.  (ECF No. 3 at 1–2.)  Despite Court
     order and an extension of time for the purpose of submitting such documents (ECF Nos. 4, 5),
27   Respondents did not provide any copies of the referenced and relevant portions of Petitioner's A-
     File or any records related to Petitioner's allegations.  (*See generally* ECF No. 6.)
28
                                              1

1

2        **I.      FACTUAL AND PROCEDURAL BACKGROUND**

3            Petitioner is a citizen of India who entered the United States on December 16, 2022.

4    (ECF No. 1 at 5; ECF No. 6 at 2.)  Petitioner was later apprehended, processed, placed into

5    removal proceedings, and released shortly afterwards.  (ECF No. 6 at 2.)  Petitioner states he has

6    no criminal history and complied with all of his immigration requirements — he attended his

7    hearings and U.S. Immigration and Custody Enforcement ("ICE") visits.  (ECF No. 1 at 5.)

8    Respondents do not contest this.  (*See generally* ECF No. 6.)  On July 29, 2025, Petitioner went

9    to his scheduled check-in with ICE at their Fresno, California office and was detained.  (ECF No.

10   1 at 6.)  Petitioner states he is an asylum seeker.  (*Id.*)

11           Petitioner has now been detained for nearly five months without a hearing.  (*Id.*)  On

12   December 15, 2025, Petitioner filed a petition for writ of habeas corpus.  (ECF No. 1.)  Based on

13   the substance of Petitioner's petition and the relief requested therein, the Court construed the

14   petition as a motion for a TRO.  (ECF No. 3.)

15       **II.     STANDARD OF LAW**

16           For a TRO, courts consider whether Petitioner has established: "[1] that he is likely to

17   succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

18   relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

19   interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a

20   showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

21   1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh

22   petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger

23   showing on the balance of the hardships may support issuing a TRO even where the petitioner

24   shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows

25   that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*

26   Simply put, Petitioner must demonstrate, "that [if] serious questions going to the merits were

27   raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to

28   succeed in a request for a TRO.  *Id.* at 1134–35.

1    **III.    ANALYSIS**

2      A.    <u>Likelihood of Success on the Merits</u>

3      Petitioner seeks release arguing his detention is unlawful under the Fifth Amendment Due

4    Process Clause.  (*See generally* ECF No. 1.)  Respondents make three threshold arguments in

5    opposition, which the Court addresses briefly before evaluating Petitioner's due process claim.

6      First, Respondents contend Petitioner's detention is lawful because he is an "applicant for

7    admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  (ECF No. 6 at

8    2.)  Respondents concede that until recently, the government interpreted § 1226(a) to be

9    applicable to noncitizens present in the United States who had not been admitted or paroled and

10   had been placed into removal proceedings.  (*Id.* at 4.)  However, Respondents contend that due to

11   "legal developments" the government determined that § 1225 is "the sole applicable immigration

12   detention authority for *all* applicants for admission."  (*Id.*)  This Court, along with other courts

13   nationwide have resoundingly rejected this argument.  *See Morales-Flores v. Lyons*, No. 1:25-

14   CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this

15   Court's reasons for taking this position).  Even on an imperfect record, absent further argument

16   from Respondents, the Court finds Petitioner is not an applicant "seeking admission" subject to

17   mandatory detention under § 1225(b)(2).  Petitioner is instead subject to § 1226(a) and is

18   therefore entitled to the process that statute requires, including a bond hearing at a minimum.

19     Second, Respondents request the Court hold its ruling on the merits in abeyance pending

20   the Ninth Circuit's decision regarding the appeal in *Rodriguez Vazquez v. Bostock*, 779 F.Supp.3d

21   1239 (W.D. Wash. 2025).  (ECF No. 6 at 4.)  The Court denies this request.  As discussed below,

22   the Court finds Petitioner is likely to succeed on the merits of his claim and the Court will not

23   delay injunctive relief on the prospective chance a pending appeal could change this outcome.

24     Finally, Respondents argue the Court should dismiss the petition or stay proceedings

25   based on Petitioner's purported failure to exhaust administrative remedies.  (*Id.* at 4–6.)

26   Specifically, Respondents contend Petitioner's request for release on bond has not been heard by

27   either an immigration judge or the Board of Immigration Appeals ("BIA") and "this Court likely

28   would benefit from an IJ's and the BIA's expertise interpreting the situation."  (*Id.* at 5.)  The

3

1  Court fundamentally disagrees.  First, it is clear any immigration judge and the BIA would accept

2  § 1225(b)(2) applies to Petitioner given the BIA's recent decision in *Matter of Yajure Hurtado*,

3  29 I&N Dec. 216 (BIA 2025), which upheld the legal interpretation of § 1225(b)(2) that

4  Respondents put forth.  Therefore, and in line with Ninth Circuit precedent, the Court will not

5  subject Petitioner to a fruitless exercise where this a predetermined outcome.  *See Vasquez-*

6  *Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it

7  is very likely what [the Board's] result would have been." (internal quotation and citation

8  omitted).)  Second, contrary to Respondents suggestion, any purported value from an immigration

9  judge or the BIA's review is minimal given the statutory interpretation question at issue here must

10  be resolved by a judicial decision on the merits.  *See Mosqueda v. Noem*, No. 5:25-CV-02304

11  CAS (BFM), 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025) (citing *Loper Bright Enters. v.*

12  *Raimondo*, 603 U.S. 369 (2024)).  As such, the Court declines to dismiss the petition or stay

13  proceedings based on exhaustion grounds.

14        Having dispensed with Respondents threshold arguments, the Court turns to Petitioner's

15  due process claim.  The Fifth Amendment Due Process Clause prohibits government deprivation

16  of an individual's life, liberty, or property without due process of law.  *Hernandez v. Session*, 872

17  F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the

18  borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678,

19  693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States,

20  including noncitizens, whether their presence here is lawful, unlawful, temporary, or

21  permanent.").  These due process rights extend to immigration proceedings.  *Id.* at 693–94.

22        Courts examine procedural due process claims in two steps: the first asks whether there

23  exists a protected liberty interest under the Due Process Clause, and the second examines the

24  procedures necessary to ensure any deprivation of that protected liberty interest accords with the

25  Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

26  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

27  the question remains what process is due.").

28        As for the first step, the Court finds Petitioner has raised serious questions as to whether

4

1    he has a protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM,

2    2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a

3    person's freedom is authorized by statute, that person may retain a protected liberty interest under

4    the Due Process Clause").  "[T]he government's decision to release an individual from custody

5    creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be

6    revoked only if [they] fail[ ] to live up to the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F.

7    Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482)

8    (modifications in original.).  "Accordingly, a noncitizen released from custody pending removal

9    proceedings has a protected liberty interest in remaining out of custody."  *Salcedo Aceros v.*

10    *Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To

11    determine whether an individual's conditional release rises to the level of a protected liberty

12    interest, courts have "compar[ed] the specific conditional release in the case before them with the

13    liberty interest in parole as characterized by *Morrissey*."  *R.D.T.M. v. Wofford*, No. 1:25-cv-

14    01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

15         Here, Petitioner gained a liberty interest in his continued freedom when ICE elected to

16    release him shortly after he entered the United States on December 16, 2022.  Under *Morrisey*,

17    this release implied a promise that he would not be re-detained, during the pendency of his

18    immigration proceedings, if he abided by the terms of his release.  Petitioner states he has

19    complied with all the conditions of his release, and he has no criminal record.  Respondents do

20    not contest this.  Additionally, Petitioner has been released for the past three years, which

21    strengthens his liberty interest.  As this Court has found previously, along with many other courts

22    in this district when confronted with similar circumstances, Petitioner has a clear interest in his

23    continued freedom.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)

24    (noting the Government's actions in allowing petitioner to remain in the community for over five

25    years strengthened petitioner's liberty interest).

26         As to the second step – what procedures or process is due – the Court considers three

27    factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an

28    erroneous deprivation of such interest through the procedures used, and the probable value, if any,

1    of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

2    the function involved and the fiscal and administrative burdens that the additional or substitute

3    procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set

4    forth below, the Court finds Petitioner has established his due process rights were likely violated.

5            First, Petitioner has a substantial private interest in remaining free from detention. As

6    discussed above, Petitioner has lived in the United States for the past three years and has built a

7    life outside of detention. Despite that, Petitioner has now been detained for approximately five

8    months without being afforded a hearing. Accordingly, this factor weighs in favor of finding

9    Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No.

10   1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding

11   similarly).

12           Second, the risk of erroneous deprivation is considerable given Petitioner has not received

13   any bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive

14   in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the

15   community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at

16   *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted). The Court finds there is a

17   serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover,

18   without any procedural safeguards to determine whether his detention was justifiable, the

19   probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

20           Finally, the Government's interest is low, and the effort and cost required to provide

21   Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-

22   TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). As this Court stated recently, it

23   would be less of a fiscal and administrative burden for the Government to return Petitioner home

24   to await a determination on his asylum petition than to continue to detain him.

25           On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due

26   process – a hearing to determine whether his detention was warranted. Accordingly, with respect

27   to his due process claim, Petitioner has shown he is likely to succeed on the merits.

28   ///

B.      Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner has been detained for approximately five months, suffers from allergies, and has difficulty keeping his turban clean which he wears every day as a member of Sikhism.  (ECF No. 1 at 6.)  Petitioner further states he is uncomfortable and in a state of constant stress.  (*Id.*)  Even if this was not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

C.      Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds there is no equitable reason that would tip the balance in the Government's favor, because the Government faces no hardship.  First, it is clear on this record that the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

In sum, these last two factors also weigh in Petitioner's favor.  Therefore, the Court GRANTS Petitioner's Motion for a TRO.

///

///

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order is GRANTED;

2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);

3. Petitioner Prem S. shall be RELEASED IMMEDIATELY from Respondents' custody.  Respondents must **file a notice certifying compliance with this provision of the Court's Order by 8:00 p.m. on December 24, 2025**;

4. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

5. Respondents are ordered to SHOW CAUSE why this Court should not convert this temporary restraining order into a preliminary injunction requiring Respondents to continue to abide by this Court's order.  Respondents shall file responsive papers by **Monday, January 5, 2026.**

6. The Appointing Authority for the Eastern District of California/Office of the Federal Defender has requested an extension until January 8, 2026 to locate counsel in this case.  The Court GRANTS the extension.  By January 8, 2026, the appointing authority shall identify counsel and send counsel's contact information to Michele Krueger, Courtroom Deputy for Chief Judge Troy L. Nunley, via email at mkrueger@caed.uscourts.gov, who shall update the docket to reflect counsel's appointment.  The Clerk of Court shall serve a copy of this Order on the Federal Defender, Attention: Habeas Appointment.

7. The matter is not set for a hearing, though the Court may set one should it later be

1     determined that a hearing is necessary.

2          IT IS SO ORDERED.

3   Date: December 24, 2025

4                                                    _____

5                                                    TROY L. NUNLEY
                                                     CHIEF UNITED STATES DISTRICT JUDGE

9